### 74869. SULTENFUSS v. THE STATE.
(363 SE2d 337)

CARLEY, Judge.

A "known confidential informant," who had given reliable information in the past, reported to police officers that appellant was selling cocaine in the parking lot of a local country club. Based on this information, police officers proceeded to the country club and began to patrol the parking lot. Although one of the officers saw a blue Oldsmobile which he knew to be similar to the automobile that was owned by appellant's father, appellant was not seen. However, the officers did see the informant as he and a number of others departed from the country club. The police officers decided to follow the informant as he drove away in his car, hoping to have an opportunity to stop him and gain further information concerning appellant's reported cocaine sales. As the result of this decision, the officers found that they were not only following the informant but were also following many others who were leaving the club and were driving to a certain apartment complex. Thus, the officers in effect followed as the site of a social gathering was apparently moved from the country club to another location. Upon their arrival at the apartment complex, the officers noticed the blue Oldsmobile which they had formerly observed in the

parking lot of the country club. The car was unoccupied but the officers confirmed by a computer check that it did belong to appellant's father. Thereafter, as the officers watched, appellant and two passengers got into the Oldsmobile and simply drove from one parking space to another. A marked police car then pulled in behind the Oldsmobile and two police officers, one of whom had a drawn gun, approached the car from either side. The officers identified themselves and ordered that appellant and his two passengers keep their hands in view and step from the car. Although the two passengers complied with the officers' request, appellant did not. When appellant failed to place his hands in view and to step from the automobile, the police officers forcibly removed him. The officers observed appellant as he dropped a plastic bag containing cocaine upon his forcible removal from the car. Appellant was then placed under arrest.

Appellant was indicted for possession of cocaine with intent to distribute. He was tried before a jury and found guilty of possession of cocaine. Appellant appeals from the judgment of conviction and sentence entered by the trial court on the jury's verdict.

1. Appellant enumerates as error the denial of his motion to suppress.

The contention that, under the existing circumstances, the officers did not have a sufficient articulable suspicion upon which to justify a brief period of investigatory detention is controlled adversely to appellant by *Stiggers v. State*, 151 Ga. App. 546, 547 (1) (260 SE2d 413) (1979). Appellant further contends that, under the evidence, the officers acted in excess of their authority to conduct an investigatory detention and arrested him without probable cause. However, the investigatory detention was not transformed into an arrest merely because one of the officers, who had physically struggled with appellant during a prior incident, drew his weapon on this occasion. See generally *Edwards v. State*, 165 Ga. App. 527, 528 (301 SE2d 693) (1983). The fact that appellant was asked and then required to step from the automobile did not transform the investigatory detention into an arrest. See *United States v. Roper*, 702 F2d 984, 987-988 (7) (11th Cir. 1983). That the detention of appellant was achieved by blocking his car did not convert the confrontation into an arrest. See *Stiggers v. State*, supra at 546.

Thus, the trial court was authorized to find that the cocaine had been discovered in plain sight during a permissible investigatory detention, which detention had been based upon a sufficient articulable suspicion that appellant was engaged in criminal activity. Therefore, the trial court correctly denied appellant's motion to suppress.

2. Over objection, the State was allowed to introduce evidence that appellant had a previous conviction for possession of cocaine. The jury was instructed that this evidence was being admitted solely

for the limited purpose of showing appellant's course of conduct and bent of mind. The admission of this evidence is enumerated as error.

"Drug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate claim will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct." *State v. Johnson*, 246 Ga. 654, 655 (1) (272 SE2d 321) (1980). Insofar as appellant had denied that the cocaine belonged to him, his prior conviction for possession of cocaine was clearly probative and admissible evidence as to the limited issue of his course of conduct and bent of mind. This enumeration is without merit.

3. Appellant moved for a mistrial on the ground that his character had been improperly placed into evidence by the testimony of a police officer who was a witness for the State. The trial court denied appellant's motion but instructed the jury to disregard the remark of the witness. Appellant then renewed his motion for a mistrial and, on appeal, he enumerates the denial of his motion for mistrial as error. However, the motion for mistrial was not erroneously denied. See *Tutman v. State*, 164 Ga. App. 400 (296 SE2d 412) (1982). See also *Sabel v. State*, 250 Ga. 640, 643-644 (5) (300 SE2d 663) (1983).

4. Error is enumerated as to the trial court's admission of certain documentary evidence over appellant's objection that it was "irrelevant and prejudicial." "An objection to evidence on the ground that it is irrelevant, immaterial and prejudicial is 'entirely too vague and general to present any questions for determination by the trial court, and the overruling of this objection did not constitute reversible error. [Cits.]' [Cit.] '(A) mere general objection to evidence that is immaterial, inadmissible and prejudicial is too general to present any question for decision. [Cit.]' [Cit.]" *Croom v. State*, 165 Ga. App. 676, 677 (3) (302 SE2d 598) (1983). Appellant's further contention that his character was placed into issue by the admission of certain testimony which was explanatory of the documentary evidence is also without merit. "Appellant made no objection to such testimony at trial and this court will not consider questions raised for the first time on appeal. [Cit.]" *Durham v. State*, 181 Ga. App. 155, 157 (3) (351 SE2d 683) (1986).

5. The trial court included in its charge to the jury the following instruction on the methods of impeachment: "[A] witness may be impeached as follows: by disproving facts to which the witness testified . . . , by proof that the witness has been convicted of a crime involving moral turpitude, or by proof of a contradictory statement previously made by the witness as to matters relevant to his or her testimony in the case." Immediately following this charge, the jury was given extensive instructions which elaborated on principles applicable

to impeachment by disproving facts and to impeachment by proof of prior inconsistent statements. Proof of a prior conviction of a crime of moral turpitude as a method of impeachment was never again specifically addressed in the trial court's charge. On appeal, appellant enumerates error in the charge on impeachment as given by the trial court but only insofar as the trial court's charge included a reference to proof of prior convictions of crimes of moral turpitude as a method of impeachment. Appellant's sole contention is that a charge on that method of impeachment was unauthorized under the evidence.

A charge on impeachment by proof of a prior conviction of a crime of moral turpitude was not authorized in this case. This would follow, if for no other reason, from the fact that no certified copy of any prior conviction of any witness was ever introduced into evidence in the guilt-innocence phase of the trial. See *Ledesma v. State*, 251 Ga. 885, 888 (4) (311 SE2d 427) (1984). However, appellant would not be entitled to a new trial simply because the charge on that method of impeachment was not authorized by the evidence and was, therefore, erroneously given in this case. "Where there is no evidence which could have misled the jury into believing that there was evidence to which a charge on the . . . legal [method] here charged of impeaching a witness could be applied, it was not reversible error to instruct the jury on the [method] of impeaching a witness." *Peters v. State*, 72 Ga. App. 157 (4) (33 SE2d 454) (1945). Appellant nevertheless contends that the erroneous charge cannot be considered harmless in this case. He urges that, unlike *Peters v. State*, supra, there was evidence which might well have misled his jury into believing that the inapplicable principle of impeachment by prior convictions for crimes of moral turpitude would be applicable. That evidence is appellant's own prior drug conviction which is discussed in Division 2 of this opinion. Since appellant was a witness in his own defense, he urges that the erroneous charge would be harmful if the jury used his prior drug conviction as a basis upon which to find that his exculpatory testimony in this case had been impeached. However, the jury was not left without instruction as to the proper consideration to be given appellant's prior conviction. The jury was repeatedly charged that that specific prior conviction could be considered solely for certain enumerated evidentiary purposes and was not to be considered for any other purpose. Accordingly, if the jury followed the trial court's instructions as to appellant's prior conviction in specific, it would not have considered that conviction as evidence to which the previous general charge on impeachment by proof of prior convictions of a crime of moral turpitude was applicable. Moreover, if the jury had determined to impeach appellant's testimony, it undoubtedly would not have acquitted him of the greater charge of possession of cocaine with intent to distribute.

Thus, the trial court erred in including in its charge a reference to the principle of impeachment by prior convictions of crimes of moral turpitude and the evidentiary posture of the case was such that this erroneous reference, if considered in isolation, would warrant reversal. However, when the erroneous instruction is considered in the context of the overall charge in which it was given, it appears to be no more than a passing general reference, followed by extensive instructions as to the two viable methods of impeachment in the case, and then followed by specific instructions the effect of which could only have been to preclude the jury from giving it harmful effect. Under these circumstances, we find that the contested "portion of the charge was at most merely irrelevant, being one of a number of stated [methods of impeachment]. The true question is whether an abstractly correct charge not authorized by the evidence is calculated to confuse and mislead the jury. The harmless error question in jury instructions as applied to criminal cases is . . . [as follows:] [W]here it is obviously highly probable that the error, if existing, did not contribute to the verdict, a reversal will not result. [Cits.] Taking the charge as a whole we find no reversible error." *Hill v. State*, 155 Ga. App. 718, 719 (1) (272 SE2d 508) (1980). See also *Cooper v. State*, 167 Ga. App. 440, 441 (306 SE2d 709) (1983).

*Judgment affirmed. Banke, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 23, 1987.

*J. Robert Daniel*, for appellant.

*Willis B. Sparks III, District Attorney, Vernon R. Beinke, Assistant District Attorney*, for appellee.